Filed 7/8/25  P. v. Santana CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B329032 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. BA476939 |
| v. | |
| DAVID CARLOS SANTANA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Craig E. Veals, Judge.  Affirmed with directions.

Benjamin Owens, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Stephanie C. Brenan and Stefanie Yee, Deputy Attorneys General, for Plaintiff and Respondent.

The People charged David Carlos Santana with murder and alleged various firearm and prior conviction enhancements. Many months before trial—and a week after newly-elected District Attorney George Gascón took office—the prosecutor moved to dismiss the firearm and prior conviction allegations based on Gascón's "Special Directive 20-08." The court denied the motion. The case went to trial, and the jury convicted Santana as charged and found true the firearm enhancement allegations. After Santana admitted the prior conviction allegations, the court sentenced him to a prison term of 75 years to life.

On appeal, relying on *Nazir v. Superior Court* (2022) 79 Cal.App.5th 478 (*Nazir*), Santana argues the court erroneously believed it could not rely on the district attorney's special directive to grant the People's motion to dismiss.[1] Contrary to Santana's contentions, the record does not show the court refused to consider the special directive. Accordingly, we affirm the judgment. However, there is a typographical error in the abstract of judgment the court must correct on remand.

## FACTS AND PROCEDURAL BACKGROUND

### 1.    *The charges*

The People filed an information charging Santana with the murder of Raymond Garcia. (Pen. Code, § 187.)[2] The People asserted various firearm enhancement allegations. (§ 12022.53, subds. (b), (c), (d).) The People also asserted Santana suffered

---

[1]    *Nazir* was decided nearly 18 months after the trial court in this case denied the prosecutor's request to dismiss the firearm and prior strike allegations.

[2]    References to statutes are to the Penal Code.

two prior convictions that qualify as five-year priors (§ 667, subd. (a)(1)) and as strikes under California's Three Strikes Law (§ 667, subd. (a)(1)).

**2.     *Pretrial motions after the newly-elected district attorney issued his "Special Directive 20-08"***

The court held a pretrial hearing on December 16, 2020. At that hearing, the prosecutor moved to dismiss the enhancements under section 1385 "at the direction of the Los Angeles District Attorney George Gascón in accordance with Special Directive 20-08."

About a week before the hearing, newly-elected District Attorney George Gascón issued his "Special Directive 20-08." (See *The Assn. of Deputy Dist. Attorneys etc. v. Gascón* (2022) 79 Cal.App.5th 503, 514–516, review granted Aug. 31, 2022, S275478.)  Gascón's special directive made significant changes to his office's Legal Policy Manual.  (See *Nazir*, *supra*, 79 Cal.App.5th at p. 486.)  The directive stated the District Attorney's office would not file sentencing enhancement allegations in new cases, and it instructed deputy district attorneys to move to dismiss or withdraw enhancement allegations in pending cases.  (*Ibid.*)

As justification for this new policy, the directive stated " 'the current statutory ranges for criminal offenses alone, without enhancements, are sufficient to both hold people accountable and also to protect public safety' and that 'studies show that each additional sentence year causes a 4 to 7 percent increase in recidivism that eventually outweighs the incapacitation benefit.'  An appendix to Special Directive 20-08 stated that there was no compelling evidence California's

100-plus sentence enhancements improved public safety, that such enhancements contributed to prison overcrowding, and that they 'exacerbate[d] racial disparities in the justice system.' The appendix also stated 'long sentences do little' to deter crime." (*Nazir*, *supra*, 79 Cal.App.5th at p. 486.)

Before the court considered the People's motion to dismiss, two of Garcia's daughters gave victim impact statements. After receiving the impact statements, the court asked the prosecutor to summarize the evidence she expected to present at trial. The court explained, "The reason I'm asking this by the way, pursuant to your policy, you're making a motion to dismiss these allegations. It's more to get a clear showing on the record that you're familiar with the facts of the case because it just seems to me to fly in face of that motion that, when you consider the facts of this case, that the special allegations are properly pled. There is evidentiary support for them, and it would be an exercise, I think, in true unfairness for me to grant that motion that the allegations be stricken because the family is entitled to justice in this case, and society is entitled to a vindication too. These are serious facts here."

The prosecutor said she expected to prove Santana planned the murder with his girlfriend, Monica Corrales. Corrales' mother, Gina Estrada, was dating the victim, Raymond Garcia. Estrada and Garcia had a history of domestic violence "on both sides," and there was animosity between their families.

The prosecutor asserted the evidence would show Santana and Corrales decided to murder Garcia after a domestic violence incident with Estrada. Corrales told Santana that Garcia received dialysis treatments three times a week at the same time and location. Santana "scoped out" the dialysis center one

4

morning and saw Garcia there.  Two days later, around 3:45 a.m., Santana shot and killed Garcia outside the dialysis center.

After the prosecutor summarized the evidence, the court denied the motion to dismiss.  The court explained "there was a preliminary hearing in this matter.  This evidence was presented to the magistrate.  Probable cause was found, and the defendants were bound for trial as a result of that.  And it just seems to me that the rationale for this policy, whatever it is, doesn't take into consideration the factual nuances of this case versus any other murder cases or any other case in which there are special allegations that are alleged.  It's indiscriminate in its application.  And I don't think the interest of justice would be served for me to grant the People's request under the facts of this case by a long shot."

The prosecutor stated she would seek leave of court to file an amended information, presumably without the enhancements.  The court stated it understood, but it noted the prosecutor's approach may present separation of powers concerns.  The court explained, it "is within the sound discretion of the court to make a decision at this point once the charges have been made.  And I'm sure, and I hope anyway, that the [higher ups] in [the District Attorney's office] are familiar with that and appreciate and respect that very foundational component of our jurisprudence in this country."

3.    *The trial, verdict, and sentence*

The People eventually tried the case to a jury.  The jury convicted Santana of first degree murder and found true the firearm enhancement allegations.  Santana admitted the prior conviction allegations.

5

At sentencing, the court struck the two five-year prior enhancements and one of the prior strikes. The court then sentenced Santana to 75 years to life, consisting of 25 years to life for first degree murder, doubled for the prior strike, plus 25 years to life for the firearm enhancement (§ 12022.53, subd. (d)). The court imposed terms for the other firearm enhancements (§ 12022.53, subds. (b), (c)), which it stayed under section 654.

Santana timely appealed.

## DISCUSSION

Santana's sole contention on appeal is the trial court erred when it denied the People's motion to dismiss the enhancements under District Attorney Gascón's Special Directive 20-08.

A trial court has discretion under section 1385 to dismiss or strike a sentencing enhancement allegation, or alternatively, strike the additional punishment for the enhancement. (*People v. Fuentes* (2016) 1 Cal.5th 218, 224–225.) The court may act on its own motion or in response to an application by the prosecuting attorney. (See § 1385, subd. (a).) When exercising its discretion, a trial court considers factors including the defendant's rights, society's interests, and individualized considerations pertaining to the defendant and his offenses and background. (*People v. Rocha* (2019) 32 Cal.App.5th 352, 359.) A court may not dismiss or strike allegations simply to accommodate judicial convenience, to alleviate court congestion, or out of antipathy for the law. (See *People v. Williams* (1998) 17 Cal.4th 148, 159.)

We review a court's denial of an application to dismiss or strike allegations under section 1385 for an abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 376.) A trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it.

6

(*Id*. at pp. 376–377.)  The party attacking the sentence has the burden to make such a showing; otherwise, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.  (*Ibid*.)

Citing *Nazir*, *supra*, 79 Cal.App.5th 478, Santana contends the trial court erred by denying the People's motion to dismiss the sentencing enhancements under the mistaken belief that it could not consider District Attorney Gascón's Special Directive 20-08.  In *Nazir*, a felony complaint charged the defendant —Rehan Nazir—with various crimes and alleged firearm enhancements.  (*Id*. at pp. 485–486.)  On December 11, 2020, three days after Gascón issued his special directive, the prosecutor made an oral motion to dismiss the firearm enhancements.  The court denied the motion, stating it was " 'based solely on District Attorney Gascón's Special Directive.' " (*Id*. at pp. 486–487.)  "The court said the cases 'are clear that the exercise of discretion under [section] 1385 must be based on an individualized consideration of the offense and the offender and not on any antipathy or disagreement with the statutory scheme.' " (*Id*. at pp. 487–488.)[3]

---

[3]	See generally Couzens et al., Sentencing Cal. Crimes (The Rutter Group 2024) § 12:11 ["In determining whether striking an enhancement is in the furtherance of justice, the court . . . should make its decision after *an individualized consideration*" of factors such as the nature and circumstances of the crime and the defendant's level of involvement, the defendant's background and prospects, the constitutional rights of the defendant and the interests of society represented by the People, and other factors that "would motivate a 'reasonable judge' in the exercise

A week later the prosecutor filed a written motion under section 1385 to dismiss the firearm enhancements, "restating verbatim the arguments recited in" an addendum to the special directive. (*Nazir*, *supra*, 79 Cal.App.5th at p. 488.) "At the hearing, the prosecutor did not present any argument in support of the motions, other than parroting the language" of the special directive. (*Ibid*.) Nazir's counsel argued the court had erred in denying the People's previous motion. (*Ibid*.)

The court denied the prosecutor's motion. Again, the court stated the " 'exclusive basis' " for the motion was the special directive. (*Nazir*, *supra*, 79 Cal.App.5th at p. 488.) To grant the motion, the court said, it " 'would have to adopt [the district attorney's] rationale,' " which was " 'not a permissible basis' " on which to grant the motion. (*Ibid*.) The court considered the information, the preliminary hearing transcript, the probation report, the nature of the offense, and Nazir's background and character, concluding the motion to dismiss the enhancements was not in the interest of justice. (*Ibid*.)

Nazir filed a petition for writ of mandate or prohibition. (*Nazir*, *supra*, 79 Cal.App.5th at p. 489.) The Court of Appeal issued a peremptory writ of mandate, concluding the "trial court misunderstood the scope of its discretion when it refused to consider Special Directive 20-08 in determining whether to grant the motion to dismiss the firearm enhancements alleged against Nazir." (*Id*. at pp. 497, 502.) The court explained a trial court may not dismiss an enhancement based on the court's personal antipathy to the law, as it would "materially impair[ ] the

of discretion."]. See also Cal. Rules of Court, rules 4.410, 4.411.5, 4.421, 4.423, 4.428.

8

inherent functions of the prosecutor." (*Id*. at p. 499.) However, "where a prosecutor, in his or her discretion, asks the court to dismiss an enhancement because the prosecutor, as a representative of the People, legitimately questions the deterrent effect or value to public safety of imposing a sentence enhancement, a court may consider that position in determining whether granting the motion furthers justice." (*Ibid*.) The court also noted the special directive cited research the Legislature relied on to amend sections 12022.5 and 12022.53, which the trial court could have considered when deciding whether to dismiss the enhancement allegations. (*Ibid*.)

However, the appellate court rejected Gascón's contention that a trial court has no authority to deny a prosecutor's motion to dismiss an enhancement under section 1385. (*Nazir*, *supra*, 79 Cal.App.5th at p. 499.) The court reiterated that, in determining whether dismissal of an enhancement furthers the interest of justice, a court "must consider case-specific factors as well as general sentencing objectives." (*Id*. at p. 485.) The court remanded the matter, directing the trial court to "consider Special Directive 20-08 in determining whether to dismiss the firearm allegations against Nazir." (*Id*. at p. 501.)

Santana's reliance on *Nazir* is misplaced. Unlike in *Nazir*, the record here does not show the trial court refused to consider the special directive. Nor does it show the court was operating under the belief that it would be error to dismiss an enhancement based on it. Instead, the court's comments at the hearing demonstrate it considered the special directive, yet ultimately concluded it was not in the interest of justice to dismiss the enhancements "under the facts of this case."

9

Santana contends the court's mistaken belief is apparent from its comments that the special directive does not take into account the "factual nuances of this case" and is "indiscriminate in its application." We disagree. The court accurately characterized the district attorney's policy, and its comments merely help to explain why it concluded the special directive did not compel relief in this particular case. They do not reflect a belief that it would be error to consider the special directive or to dismiss any enhancement based on it, as was the case in *Nazir*.

Here, unlike in *Nazir*, the record does not affirmatively show the court misunderstood the scope of its discretion under section 1385. Nor does it show the court otherwise abused that discretion when it denied the People's motion to dismiss the enhancement allegations. Accordingly, remand is not required. (See *People v. Fuhrman* (1997) 16 Cal.4th 930, 945 ["in the absence of any affirmative indication in the record that the trial court committed error . . . , relief on appeal is not appropriate"].)

Although the court need not reconsider the People's motion, there is a typographical error in the abstract of judgment that the court must correct on remand. The abstract of judgment states the court imposed a term of 25 years to life for a section "1202.83(D)" enhancement. In fact, the court imposed the term for an enhancement under section 12022.53, subdivision (d). The abstract of judgment must be corrected to reflect the proper statute. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185 [courts have the inherent power to correct clerical errors in abstracts of judgment at any time].)

10

## DISPOSITION

The judgment is affirmed. On remand, the trial court is directed to correct the abstract of judgment to reflect the proper statute for the firearm enhancement, and to forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

EDMON, P. J.

ADAMS, J.